JACQUELINE S. BALLATO ET AL. *v.* BOARD OF EDUCATION OF THE TOWN OF STONINGTON
(11740)

FOTI, FREEDMAN and SCHALLER, Js.

Argued September 13—decision released November 23, 1993

*Joel M. Ellis,* with whom was *William S. Zeman,* for the appellants (named plaintiff et al.).

*Richard D. O'Connor,* with whom, on the brief, was *Miguel A. Escalera, Jr.,* for the appellee (defendant).

SCHALLER, J. The plaintiffs Jacqueline S. Ballato, Donna B. Smith, Candace B. Wood and Celia H. Landon appeal from the judgment of the trial court dismissing their appeal from the actions of the defendant Stonington board of education terminating their employment contracts.[1] The plaintiffs contend that the trial court improperly upheld the following determinations of the board: (1) that the plaintiffs' positions as nurse-teachers had been eliminated; and (2) that the plaintiffs' contracts had been terminated in accordance with a valid seniority list. We affirm the judgment of the trial court.

The following facts form the basis of this appeal. All four plaintiffs were employed by the board as nurse-teachers.[2] While nurses performed solely clinical nursing duties, nurse-teachers performed clinical nursing functions and taught health education pursuant to state teaching certification.[3]

---

[1] Heather M. Kiss, another plaintiff, is not a party to this appeal. The term plaintiffs hereinafter refers solely to Ballato, Smith, Wood and Landon.

[2] Ballato was hired by the board in September, 1973, and certified as a nurse-teacher in August, 1975; Landon was hired in April, 1985, and certified in February, 1989; Wood was hired in April, 1985, and certified in June, 1985; Smith held certification when hired in June, 1988.

[3] Although titled nurse-teachers, the plaintiffs apparently spent most of their time performing clinical nursing duties. For example, during the 1990–1991 school year, Landon spent only 14 percent of her time teaching health education.

At a public meeting on June 24, 1991, superintendent of schools Thomas Reale recommended that the board consider the termination of the plaintiffs' contracts under General Statutes § 10-151. Section 10-151 (d) provides that, prior to terminating the contract of a tenured teacher,[4] the board shall give the teacher written notice that termination is under consideration, as well as provide the teacher, upon request, with a written statement of the reasons for the possible termination. Each plaintiff requested such a statement and the board provided the following reasons: "1. the elimination of your position or the loss of your position to another teacher; 2. other due and sufficient cause. More specifically and by way of amplification: a. budgetary considerations; b. recommendations which are consistent with established staff reduction procedures and an analysis of program staffing needs."[5]

Pursuant to § 10-151 (d), each plaintiff then requested a hearing regarding the board's consideration of the termination of her contract. On July 30, 1991, an

[4] The term "tenure" is defined in General Statutes § 10-151 (a) (6) (A) as "[t]he completion of thirty school months of full-time continuous employment for the same board of education."

[5] These reasons are contained in the letters sent by the board to the plaintiffs, pursuant to the plaintiffs' requests. The letters can be found in the administrative record and state the following:

"Dear [Plaintiff]:

"The purposes of this letter are to inform you that your request for a statement of reasons concerning the Board of Education's decision to consider the termination of your employment contract was received on [date] and, in accordance with the Board's responsibility under Section 10-151 of the Connecticut General Statutes, to provide you with a response to your request.

"Consequently, please be advised that the Board of Education is considering the termination of your contract of employment for the following reasons: [reasons set forth in text]

"If you have any questions concerning your status or the above statement of reasons, please feel free to contact my office at your convenience.

"Respectfully,

[signature]

Thomas F. Reale, Jr. Superintendent of Schools"

administrative hearing was held with Frank Logue as the impartial hearing officer. Logue made the following findings of fact pertinent to this appeal. Prior to the summer of 1989, "the Nurse-Teachers had their own bargaining unit and bargained with the board of education concerning salaries and other conditions of employment."

On the basis of the classroom duties that the plaintiffs performed, they sought in the spring of 1989 to become members of the Stonington education association (association), which negotiated contracts for the teachers bargaining unit. The association and the board had previously negotiated a collective bargaining agreement for 1986–1989, with a provision that the agreement would continue in force until a new collective bargaining agreement was negotiated.[6] Thomas Makela, president of the association, indicated that there would be concerns about impacts on the seniority of present association members if the nurse-teachers joined the association. Despite its concerns, the association proposed to the board that the plaintiffs be included in the teachers bargaining unit, but the board objected. To determine whether the plaintiffs should be included in the teachers bargaining unit and then be eligible for representation by the association, a unit clarification petition was brought to the state board of education. At a recess in the June 23, 1989 hearing on the unit clarification petition, the board and the association reached an agreement concerning the plaintiffs' status in the teachers bargaining unit and the association.

A memorandum of agreement filed with the town clerk on July 14, 1989, stated in part that "seniority for the purposes of time as a Nurse-Teacher within the

---

[6] A new collective bargaining agreement for the years 1990–1993 was not reached until January 31, 1991.

contract and within the Association shall commence effective August 29, 1989.''[7] A prior agreement between the nurse-teachers and the board expired when the memorandum of agreement was ratified by the association in September, 1989. The nurse-teachers then became members of the teachers bargaining unit. By its terms, the memorandum of agreement expired on August 31, 1990.

The hearing officer found, in addition, that the plaintiffs did not dispute the continuing application of the provisions of the memorandum of agreement beyond August 31, 1990, until the issue of contract terminations arose in 1991. When preparing for the 1991–1992 school year, the board received a budget that equalled that of the 1990–1991 school year, despite nondiscretionary increases in expenses such as an 8 percent increase in teachers' salaries and a 30 percent increase in health insurance costs. As a result of these expenses without a corresponding increase in the school budget, the board had to reduce its expenses in many ways, including a staff reduction equal to twenty full-time teaching positions.

To determine which teachers would have their contracts terminated pursuant to § 10-151 (d), a seniority list agreed upon by the association and the board became important.[8] In the 1990–1993 collective bar-

---

[7] In addition to this provision regarding seniority, the memorandum of agreement altered several other provisions from the 1986–1989 collective bargaining agreement with regard to the plaintiffs.

[8] General Statutes § 10-151 (d) provides in pertinent part: "The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for . . . (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher if no other position exists to which such teacher may be appointed if qualified . . . and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with . . . (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization . . . ."

gaining agreement between the association and the board, article thirty-eight, subsection D, provided that "[a] seniority list will be developed and agreed to by both parties." Landon, Smith and Wood were initially listed as having one year of service. In preparing the final list, the board and the association had seniority verification cards sent to each teacher. The cards listed the years of service for each teacher as of September 9, 1990, and requested that the teachers check one of the following statements: "I agree that the information above is correct and may be used as a basis for determining my certification status and years of service in the Stonington Public Schools"; or "I feel that the information above is incorrect for the following reasons . . . ."

Ballato was listed as having zero years of service, and she objected. The hearing officer found, however, that in order to enhance other pension rights, Ballato had waived the opportunity to be included in the association bargaining unit for one year. No evidence was presented concerning the verification cards of Landon, Smith or Wood. On June 27, 1991, the president of the association met with the superintendent regarding the seniority list and made no objection to the final list as of that date. The final seniority list had Landon, Smith and Wood each with one year of service, and Ballato with zero years.

On the basis of these findings, the hearing officer recommended to the board that it terminate the contracts of the plaintiffs in accord with the seniority list developed by the board and the association. On August 22, 1991, the board adopted this recommendation and terminated the contracts of the plaintiffs. The clinical duties that the plaintiffs had performed would then be performed by nurses. The teaching duties that

the plaintiffs had performed would then be performed by teachers with more seniority than the plaintiffs.[9]

Pursuant to General Statutes § 10-151 (f), the plaintiffs appealed the decision of the board to the Superior Court, claiming that the plaintiffs' positions had not been "eliminated" under § 10-151 (d) (5), and that, even if the court found that they had been eliminated, the contracts were terminated on the basis of an invalid seniority list. The function of the trial court "in reviewing the action of the board pursuant to General Statutes § 10-151 (f) . . . 'is to determine whether the board has acted illegally and not to substitute [its] judgment for that of the board.' " *Tomlinson* v. *Board of Education,* 226 Conn. 704, 713–14, 629 A.2d 333 (1993), quoting *Rado* v. *Board of Education,* 216 Conn. 541, 555, 483 A.2d 102 (1990); see *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747 (1956). Applying this standard, the court upheld the board's determinations, and dismissed the plaintiffs' appeal. The plaintiffs now appeal from the trial court's judgment dismissing their appeal.

I

ELIMINATION OF POSITIONS

The plaintiffs contend that the termination of their contracts under General Statues § 10-151 (d) (5) was illegal. Under that section, the contracts of tenured teachers can be terminated due to "elimination of the position to which the teacher was appointed or loss of a position to another teacher . . . ." The plaintiffs argue that their positions as nurse-teachers have not been eliminated because the functions of clinical nursing and health education teaching that comprised the

---

[9] The plaintiffs Ballato, Landon and Smith were later rehired as full-time nurses. The plaintiff Wood was rehired in the position of a 0.7 teacher for the 1991–1992 year.

position of nurse-teacher are still being conducted. Clinical nursing duties are performed by nurses, while health education instruction has been undertaken by other certified teachers with more seniority.

The phrase "elimination of the position" has not been defined by our legislature or our courts. To determine the meaning of this phrase, "the court must construe it in accordance with the statute's background and purpose, as well as with common sense." *Connecticut Bank & Trust Co.* v. *Winters,* 225 Conn. 146, 158, 622 A.2d 536 (1993); *In re Valerie D.,* 223 Conn. 492, 512–13, 613 A.2d 748 (1992); *Warkentin* v. *Burns,* 223 Conn. 14, 20, 610 A.2d 1287 (1992).

The language at issue became part of an existing body of law concerning teacher tenure in 1955. See General Statutes (1955 Rev.) § 938d. Legislative history of this amendment is sparse, and fails to address the phrase "elimination of the position." The intent of the amendment is, however, clear. The provisions regarding the termination of teachers' contracts were enacted to prevent terminations made in bad faith, such as terminations due to political motives or mere whimsy.[10]

The plaintiffs suggest that, in order for a "position" to be "eliminated," others cannot perform the functions that comprised that position. In other words, clinical nursing could not be provided and health education

---

[10] The legislative history for the house and senate regarding this amendment, formerly House Bill No. 1900, notes a favorable reception to the amendment and the desire to provide teachers with more job security. 21 H.R. Proc., Pt. 1, 1955 Sess., pp. 550–53; 12 S. Proc., Pt. 3, 1955 Sess., pp. 678–80. Legislative history regarding House Bill No. 591 is more abundant, as the joint committee on education recorded various sessions regarding this bill. House Bill No. 591 contained an identical listing of the reasons for termination of teachers' contracts. In public discussion on this bill, many members of the teaching community praised it as providing security and removing the arbitrariness that apparently had surrounded teacher terminations. Conn. Joint Standing Committee Hearings, Education, Pt. 1, 1955 Sess., pp. 129–32, 138, 140–54.

could not be taught. Similarly, under the plaintiffs' interpretation of this section, a board could not reduce the number of math teachers from six to five, while the number of children taught remained constant, without removing math from the curriculum. Such a definition is too strained.

"Position" is defined as "an employment for which one has been hired: job," while "eliminate" is defined as to "get rid of." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). A reasonable, common sense interpretation of the word "position" in this statute is that it applies to the specific job that the person has contracted to undertake rather than to an entire department or program. If a person is hired as a math teacher and the board chooses, pursuant to § 10-151 (d) (5), to "eliminat[e] . . . *the* position to which the teacher was appointed," the decision is specific to that person's job, rather than encompassing the entire department of math teachers. (Emphasis added.) In this case, the facts are less complex. No employee of the board currently has a job that involves both clinical nursing duties and health education instruction. The jobs or positions held by the nurse-teachers, for the purposes of the statute, have been eliminated. While the functions performed by those nurse-teachers are now performed by other personnel, a dispersement of duties after the board has determined in good faith that some positions need to be eliminated is appropriate.[11] Here, the board deter-

---

[11] Similarly, in the example where the six math teachers' positions are reduced to five, with no reduction in the number of students, the position of one math teacher has been eliminated, it no longer exists. Such elimination and consolidation is appropriate if undertaken in good faith. Views similar to this have been expressed in other jurisdictions. In California, the Court of Appeals stated that the "particular kind of service of the employee may be eliminated even though a service continues to be performed or provided in a different manner by the district." *Campbell Elementary Teachers Assn., Inc.* v. *Abbott,* 76 Cal. App. 3d 796, 812, 143 Cal. Rptr. 281 (1978). The court cited approvingly a case where the school board discontinued

mined in good faith that budgetary constraints required the elimination and consolidation of various teaching positions. The trial court properly upheld the board's determination.

## II

## SENIORITY LIST

The plaintiffs contend that the provision of the memorandum of agreement filed on July 14, 1989, regarding the plaintiffs' seniority in the association did not govern their seniority rights under the 1990–1993 collective bargaining agreement between the board and the association. Article twenty-three, subsection B, of the 1990–1993 collective bargaining agreement states in part that "[t]his agreement contains the full and complete agreement between the board and the Association on all negotiable matters for the duration of this contract only." Article thirty-eight, subsection D, states that "[s]eniority will be determined using the total years of service in the Stonington Public Schools . . . " and that "a seniority list will be developed and agreed to by both parties." There is no mention of the July, 1989 memorandum of agreement regarding the plaintiffs' seniority. The plaintiffs argue, therefore, that the July, 1989 memorandum of agreement no longer controls the plaintiffs' seniority.

---

the services of "traveling" art teachers who went from school to school and continued to offer art instruction by departmental teachers. Id.; see *Davis* v. *Berkeley School District,* 2 Cal. 2d 770, 770–71, 40 P.2d 835 (1934). In addition, New York has also adopted this stance, stating that a school district may reorganize its teaching staff by the abolition or consolidation of teaching positions. *Matter of Young* v. *Board of Education,* 35 N.Y.2d 31, 34, 315 N.E.2d 768, 358 N.Y.S.2d 709 (1974). In that case, the court determined that in light of increasing budgetary constraints, abolishing the position of full-time attendance teacher and dividing those duties among the existing principals and assistant principals of the district was valid. *Ryan* v. *Ambach,* 71 App. Div. 719, 419 N.Y.S.2d 214 (1979) (abolishment of position and fractionalization of duties not per se violative of teacher tenure laws).

Essentially, this is an issue of contract interpretation. Did the parties intend that the terms of the July, 1989 memorandum of agreement continue to govern the plaintiffs' seniority rights when the board and the association entered into new collective bargaining agreements? "The intention of the parties in executing a contract is a question of fact." *McClintock* v. *Rivard,* 219 Conn. 417, 431, 593 A.2d 1375 (1991); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–275, 439 A.2d 314 (1981). As a result, this court "will not disturb the trial court's conclusion . . . unless the conclusion is unsupported by the evidence and, therefore, could not reasonably have been reached." *McClintock* v. *Rivard,* supra.

Although the term "seniority" is clearly defined in article thirty-eight, subsection D, of the 1990–1993 collective bargaining agreement, suggesting that the definition provided there should govern, this term is latently ambiguous. A latent ambiguity arises when language "is clear and intelligible and suggests but a single meaning, but some extrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings . . . ." Black's Law Dictionary (6th Ed. 1990). Here, evidence outside the 1990–1993 collective bargaining agreement creates a choice of meanings for the term as either total years of service or total years of service pursuant to the July, 1989 memorandum of agreement. When an ambiguous term is at issue, the trial court can examine the extrinsic evidence to resolve the question of the parties' intent. *Kronholm* v. *Kronholm,* 16 Conn. App. 124, 131, 547 A.2d 61 (1988).

In this case, the trial court relied on several factors in determining that the parties intended the provisions of the July, 1989 memorandum of agreement to continue in force. First, the plaintiffs never questioned the seniority list through the grievance procedures set forth

in article twenty-eight of the collective bargaining agreement. Second, the president of the association and the board agreed to a seniority list pursuant to article thirty-eight, subsection D, of the collective bargaining agreement in which Ballato had zero years of service, while Landon, Smith and Wood each had one year. In addition, the court reasoned that, because the July, 1989 memorandum of agreement allowed the plaintiffs to become members of the association and teachers bargaining unit, to contend that the provisions of the agreement regarding seniority had expired would likewise suggest that the main provision allowing the plaintiffs into the bargaining unit would also have expired.[12] On the basis of these factors, the court concluded that the parties intended the provisions of the July, 1989 memorandum of agreement regarding the seniority of the plaintiffs to continue into the new collective bargaining agreement.

In reviewing the trial court's factual determination of the intentions of the parties, we will apply a clearly erroneous standard. " 'The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *Groton* v. *Yankee Gas Ser-*

---

[12] The plaintiffs raise the issue in their brief that since they performed some teaching duties, they were entitled by law to be members of the teachers bargaining unit pursuant to General Statutes § 10-153b. It is unclear that the plaintiffs' limited teaching duties, coupled with their largely clinical nursing function, would have qualified them as members of the bargaining unit absent the July, 1989 agreement, as the unit clarification proceeding was never completed. On the basis of the limited information and evidence regarding this issue before this court, it is inappropriate to decide whether the plaintiffs were legally entitled to be members of the unit.

*vices Co.,* 224 Conn. 675, 691, 620 A.2d 771 (1993); *Crowell* v. *Danforth,* 222 Conn. 150, 156, 609 A.2d 654 (1992); see also *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 220, 435 A.2d 24 (1980)." *Pollio* v. *Conservation Commission,* 32 Conn. App. 109, 115, 628 A.2d 20 (1993). On the basis of the evidence presented as a whole regarding the plaintiffs' admission to and status in the association, the trial court's findings relating to the parties' intentions were not clearly erroneous. We conclude, therefore, that the evidence supports the trial court's decision to hold the board's determination that the plaintiffs continued to be governed by the July, 1989 memorandum of agreement with regard to seniority.

The judgment is affirmed.

In this opinion the other judges concurred.