[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTIONS FOR RECONSIDERATIONAND TO PARTIALLY VACATE THIS COURT'S AUGUST 17, 1995 ORDER
This matter is before the court on Eugene Murphy's motions for reconsideration and to partially vacate the court's August 17, 1995 decision, that ordered Mr. Murphy and Frances Murphy to enter into a Qualified Domestic Relations Order (QDRO). The issue presented by Mr. Murphy's moving papers is whether this court has the ability to order the parties to enter into a QDRO, based on the 1985 dissolution order entered by Judge Ryan in accordance with the parties' separation agreement.
Based on the testimony and arguments presented on November 17, 1995, the court reaffirms and republishes its August 17, 1995 decision, with the modification recited, infra, and finds that it maintains the ability, post judgment, to order the parties to enter into a QDRO. Therefore, the parties are ordered to enter into a forthwith, submit it to the plan administrator and, thereafter, file it with the court for execution.
In its August 17, 1995 decision, the court, after determining that the separation agreement was ambiguous, applied contractual construction principles to the document to find that Ms. Murphy CT Page 13391 was entitled to the status of a full beneficiary under Mr. Murphy's pension. Subsequent to the court's decision, the parties suggested that Ms. Murphy is entitled to only a 50 percent joint and survivor annuity under 26 U.S.C. § 417(b)(1), since that percentage was all that the parties had bargained for in the separation agreement. Recognizing that the record was devoid of any evidence suggesting this fact, the court, on November 17, 1995, recalled the parties to present testimony as to their intentions at the time they executed the separation agreement. From that hearing, the court has gleaned that the intention of the parties was that Ms. Murphy be considered a 50 percent beneficiary of the joint and survivor annuity maintained by Mr. Murphy.
Under ERISA, a QDRO "`creates or recognizes the existence of
an alternate payee's right to . . . receive all or a portion of the benefits payable'" under a plan. (Emphasis added.) Carland v.Metropolitan Life Insurance Co., 935 F.2d 1114, 1119 (10th Cir. 1991), quoting 29 U.S.C. § 1056(d)(3)(B)(i)(l). The DRO in a QDRO "means any judgment, decree or order which" relates to the provision of alimony payments or marital property rights to a spouse or former spouse. 29 U.S.C. § 1056(d)(3)(B)(ii)(l). "The statute does not require that the domestic relations order (DRO) itself actually create or distribute `marital property'; it requires only that the order `relates to the provision . . . marital property rights.'" Brotman v. Molitch, 1989 U.S. Dist. LEXIS 9157, p. 9 (D.Pa. 1989).
To qualify as a QDRO under the statute, "a court order must include: (1) the name of the participant and the name and mailing address of an alternate payee covered by the order, (2) the amount or percentage of benefits payable to an alternate payee or a manner of determining the amount or percentage, (3) the number of payments or period affected by the order, and (4) the plan to which the order applies." Carland v. Metropolitan Life InsuranceCo., supra, 935 F.2d 1119, citing29 U.S.C. § 1056(d)(3)(B)(i)(ll), (d)(3)(C).
"The trial court has the power to order the parties to enter into a qualified domestic relations order, which is a domestic relations order adhering to" the tax code,26 U.S.C. § 414(p)(1)(A)(i), and ERISA, as set forth above. Matter ofMarriage of Cray, 846 P.2d 944, 949 (Kan.App. 1993). "Such an order is not a qualified domestic relations order until it is approved by the plan administrator, and the plan administrator is CT Page 13392 not bound by an unapproved domestic relations order." (Emphasis in original.) Id. Therefore, the appropriate action for the trial court to take in situations such as this is to order the parties to enter into a "proposed" qualified domestic relations order. Id. Thereafter, the document is submitted to the plan administrator for approval and then returned to the court for its imprimatur. Id.
ERISA has no statute of limitations for the entry of a QDRO. The intentional absence of a statute of limitations is bolstered by the fact that a QDRO is defined as a judgment, decree or order which relates to marital property. 29 U.S.C. § 1056(d)(3)(B)(ii)(l). Conceivably, such an order could be entered at any time after judgment. In fact, the attorneys in this matter acknowledged that the common practice in Connecticut is to obtain the judgment of the court and thereafter to enter into the QDRO.
The idea of an open-ended timetable for the entry of a QDRO is further supported by the case of Brotman v. Molitch, supra, 2, wherein a divorce judgment and property settlement were finalized in 1978. In 1987, the judgment and settlement agreement were registered in New Jersey. Id. Thereafter, in 1988, the New Jersey judge appropriately entered a QDRO. Id., 3. A similar situation is present here. The divorce and separation orders were entered in 1985, and the wife is now attempting to obtain a QDRO. Therefore, it appears completely proper to enter an order requiring the Mr. and Ms. Murphy to enter into a QDRO to effectuate the court's 1985 judgment, thereby "invok[ing] the general power of the Superior Court to enforce its own judgments. See 46 Am.Jur.2d, Judgments § 898; 49 C.J.S., Judgments § 586." Gentile v. Ives, 163 Conn. 281, 282, 303 A.2d 720 (1972).
The pension which the court is dealing with in this case is a "joint and survivor annuity" which receives special treatment under the tax code. A joint and survivor annuity means an annuity "for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse . . . ." 26 U.S.C. § 417(b)(1). Under a joint and survivor annuity the former spouse displaces the current spouse as the beneficiary of the participant's pension. Id., § 414(5) (former spouse treated as surviving spouse if provided for in a QDRO). CT Page 13393
In the present case, the settlement agreement states only that Ms. Murphy is to be the beneficiary of Mr. Murphy's pension. The document is silent as to the percentage of the joint and survivor annuity Mr. and Ms. Murphy bargained for. "`When an ambiguous term is at issue, the trial court can examine the extrinsic evidence to resolve the question of the parties' intent. Kronholm v. Kronholm, 16 Conn. App. 124, 131, 547 A.2d 61
(1988).' Ballato v. Board of Education, 33 Conn. App. 78, 88,633 A.2d 323 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37
(1994)." Larson v. Jacobson, 38 Conn. App. 186, 190, 659 A.2d 753
(1995). The testimony at the hearing revealed that the intention of the parties was to treat Ms. Murphy as a 50 percent beneficiary of the joint and survivor annuity.
Accordingly, the court finds that the most equitable, reasonable and rational reading of the agreement; Game-A-TronCorporation v. Gordon, 2 Conn. App. 692, 694-95, 483 A.2d 620
(1984); is that Ms. Murphy is entitled to the status of a 50 percent beneficiary of the joint and survivor annuity.
Based on the foregoing, the court denies Mr. Murphy's motions for reconsideration and to partially vacate the court's order of August 17, 1995. The court, however, modifies its prior order as follows: The parties are ordered to enter into a QDRO, naming Frances B. Murphy as the 50 percent beneficiary of the joint and survivor annuity, and submit it to the plan administrator for approval. Thereafter, the parties are ordered to return the QDRO to the court clerk for execution by the court.
T. Clark Hull, State Trial Referee