William J. **KERIN**, Plaintiff–Appellee,

v.

**UNITED STATES POSTAL SERVICE,** Defendant–Appellant.

No. 1308, Docket 96–6129.

United States Court of Appeals, Second Circuit.

Argued April 28, 1997.

Decided July 7, 1997.

CALABRESI, Circuit Judge.

## I. BACKGROUND

The plaintiff William J. Kerin owns the building and premises that the United States Postal Service uses as its South Windsor, Connecticut, postal facility. The office was built in 1968 pursuant to a Postal Service standard form agreement to lease ("Agreement to Lease") entered into by the Post Office Department (the predecessor of the Postal Service) and W.O. Kierstead, of which the plaintiff was then president. After the post office was completed, the parties signed a standard-form government lease ("Lease") on December 9, 1969, which expressly incorporated the terms and conditions of the Agreement to Lease and gave the Postal Service the right to possession until December 31, 1999. In January 1970, Kerin purchased the premises from Kierstead and received an assignment of all of Kierstead's rights and obligations under the Lease.

The focal point of this litigation is which of the parties was responsible for maintaining the sewerage system and the parking lot at the postal facility, given the language of the Lease and an alleged thirty-person occupancy restriction.

Neither the lessor nor the lessee had the sewerage system's septic tanks pumped out from the inception of the Lease until the tanks overflowed in December of 1984. From December 7, 1984 to July 1, 1985, the Post Office had the tanks emptied on a weekly basis. Thereafter, nothing was done to the sewerage system until February 1989, when the septic tanks again overflowed. Postal officials then arranged for the system to be repaired and for the septic tanks to be pumped twice weekly until July 1993, at which time the facility was connected to the city sewer system.

There were also problems with the parking lot. In August 1982, the Postal Service became aware that the rear parking lot was not draining properly and so notified the plaintiff. Kerin hired a construction company to make repairs, but the Postal Service alleged

Philip L. Steele, Hartford, CT, for Plaintiff–Appellee.

Constance A. Wynn, Appellate Staff, Civil Division, Department of Justice, Washington, DC (Frank W. Hunger, Assistant Attorney General, Civil Division, Department of Justice; Christopher Droney, United States Attorney for the District of Connecticut; Marc Richman, Appellate Staff, Department of Justice), for Defendant–Appellant.

Before: KEARSE and CALABRESI, Circuit Judges, and OBERDORFER,* District Judge.

* The Honorable Louis F. Oberdorfer, Senior District Judge of the United States District Court for the District of Columbia, sitting by designation.

that the problems continued. In 1986, the Postal Service had the parking lot repaired and sought reimbursement from the plaintiff. The plaintiff refused to compensate the Postal Service.

In April 1990, the plaintiff sued the Postal Service for breach of the Lease and for unjust enrichment; he sought ejectment in addition to money damages.[1] Kerin claimed that the defendant had violated a thirty-person occupancy restriction in the Lease and that this overuse had damaged the septic system and the parking lot, as well as other parts of the facility. He also contended that the defendant had failed to meet its obligations to pump and clean the septic tanks and to maintain the parking lot. The defendant countered that the Lease contained no such occupancy restriction, and that the Lease required the plaintiff to maintain the septic tanks and the parking lot. The defendant therefore counterclaimed for the expenditures it had made to repair the tanks and lot.

After the defendant's motion for summary judgment was denied by Judge Alan H. Nevas, the parties agreed to have the case heard by Magistrate Judge Thomas P. Smith. On October 14, 1994, Magistrate Judge Smith held that the Postal Service had breached the Lease by: (1) allowing more than thirty employees to use the facility; and (2) failing to maintain the sewerage system and the parking lot. The magistrate judge then determined that these breaches had led to damage to the septic tanks, to the parking lot, and to other parts of the facility. He concluded, however, that money damages, and not ejectment, was the appropriate remedy.

On March 6, 1996, the district court awarded the plaintiff $126,802. This sum included damages for the following breaches of the Lease: (1) $20,000 for increased maintenance costs due to the excessive number of employees working at the facility; (2) $23,316 for harm to the sewerage system; (3) $486 in charges for use of the city sewer system in 1994 and 1995; and (4) $18,000 for damage to the parking area. The balance of the sum was an unjust enrichment award of $65,000 to compensate the plaintiff for the benefits the Postal Service had obtained by having more than thirty employees at the facility.

This appeal ensued.

## II. DISCUSSION

The issues to be determined are: (A) whether the district court erred in awarding damages for breaches of the Lease; and (B) whether the district court was mistaken in finding unjust enrichment. The plaintiff does not challenge the decision that ejectment was inappropriate.

### A. The District Court Did Not Err in Awarding Damages for Breaches of the Lease

The district court awarded damages for two independent breaches of the Lease—the defendant's overuse of the postal facility and its failure to maintain the sewer system and the parking lot. Both of these findings were based on interpretations of provisions in the Lease and the Agreement to Lease. The defendant challenges these findings on the ground that the district court misinterpreted the relevant provisions.

■ As an initial matter, we must address the question of whether federal common law or state law applies to the interpretation of Postal Service Leases. The only two circuits to have directly addressed the issue have given different answers. *Compare Forman v. United States*, 767 F.2d 875 (Fed.Cir.1985) (federal common law applies), *with Powers v. United States Postal Serv.*, 671 F.2d 1041 (7th Cir.1982) (state law applies). The magistrate judge in this case did not refer to either *Powers* or *Forman*, but relied instead on our decision in *United States v. Bedford Assocs.*, 657 F.2d 1300, 1309 (2d Cir.1981), which held that federal common law applies to resolve certain disputes between the United States and its lessors. The magistrate judge, however, did not address the fact that, in distinguishing *Bedford*, *Powers* stated that *Bedford*'s analysis did not apply to issues

---

1. Jurisdiction in the district court was based on 39 U.S.C. § 409(a), which gives the federal courts, concurrently with the state courts, jurisdiction over suits by or against the Postal Service.

arising under existing Post Office Leases. *Powers,* 671 F.2d at 1045. There is, we believe, "room for fair debate" about whether the interpretation of Postal Service Leases like the one before us "is an area appropriate for application of uniform federal law." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2d Cir.1987). But as in *Victrix,* we need not resolve the question here, since the "application of both federal and state law lead to the same result." *Id.*

In construing the Lease, we must first consider whether the relevant provisions were, as the district court predominantly found them to be, ambiguous. We do this under both federal common law and Connecticut law, which, the parties agree, would be the applicable state law. The existence of ambiguity is a question of law that we review de novo. *Tourangeau v. Uniroyal, Inc.,* 101 F.3d 300, 306 (2d Cir.1996); *Pacific Indem. Ins. Co. v. Aetna Cas. & Sur. Co.,* 240 Conn. 26, 688 A.2d 319, 321 (1997). If we find that the provisions were indeed ambiguous, we review the district court's resolution of that ambiguity for clear error. *Tourangeau,* 101 F.3d at 306; *24 Leggett Street Ltd. Partnership v. Beacon Indus.,* 239 Conn. 284, 685 A.2d 305, 311 (1996).

### 1. The Overuse Claim

■ Both parties acknowledge that the Agreement to Lease contained a construction specification that the sewerage system was for "a maximum occupancy of 30 employees," Agreement to Lease, Applicable Notes ¶ 6, and that the terms of the Agreement to Lease were incorporated into the Lease, Lease ¶ 17. The parties also do not dispute that since 1981, more than thirty employees have been employed at the facility, although they do dispute whether there were more than thirty employees working in the building at any given time.

The crux of the disagreement is whether the construction specification constituted an occupancy restriction. We agree with the court below that the provision is ambiguous; the specification is not an explicit cap on occupancy, but its natural consequence would seem to require the occupancy of the building to be limited to thirty. We also find that the magistrate judge did not err in resolving that ambiguity in favor of the plaintiff. In so doing, the judge simply emphasized common sense, concluding that it was unreasonable for the defendant to assume that it could make "virtually unlimited use . . . of the facility and its septic system," given that it knew that the septic system was not designed for more than thirty. The defendant alleges in the alternative that, even assuming that the construction specification *was* an occupancy restriction, it only referred to the number of workers in the building at one time. The court's further finding that the occupancy restriction referred to all persons using the building in a normal workday, and not to persons using the building at one time, is also not clearly erroneous. While the defendant's interpretation might not be unreasonable if all that were involved were use of the parking lot, it seems unlikely in this case given that it would allow almost unrestricted use of a highly limited sewerage system.

### 2. The Claims Regarding Maintenance of the Sewer System and the Parking Lot

■ Paragraph six of the Lease imposes on the lessor the duty to "furnish and pay for sewerage service." Lease ¶ 6. The defendant maintains that this provision unambiguously obligates the plaintiff to provide a functioning sewer system, and that this includes routine pumping and cleaning of the septic tanks. The plaintiff, in contrast, contends that the duty to furnish "sewerage service" imposed by paragraph six only requires the plaintiff to provide a sewer system, and does not oblige him to pump and clean the septic tanks.

The defendant's position is supported by the fact that the next sentence of the Lease obligates the lessor to provide for a heating *system,* and this would seem to refer only to the equipment needed for heating. *Id.* The interpretation of sewerage "service" as extending beyond a "system" (and therefore beyond the mere provision of sewerage equipment) is bolstered in turn by the definition of service as a "*labor* to be rendered by one person to another." BLACK'S LAW DICTIONARY 1368 (6th ed.1990) (citation omitted and emphasis added). This, however, does

not end the inquiry. The same legal dictionary cautions that "service" is a term that "has a variety of meanings, dependent upon the context or the sense in which used." *Id.* (citation omitted). It follows that the phrase "sewerage service" might be used in the Lease as a term of art. *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996) (terms must be interpreted according to their trade usage); *Collins v. Sears, Roebuck & Co.,* 164 Conn. 369, 321 A.2d 444, 448 (1973) (ordinary meaning to be followed unless technical meaning intended). And there is evidence that the trade usage or technical meaning of "sewerage service" comports with the plaintiff's narrower interpretation. For example, a general dictionary defines "service" as "a pipe branching from a gas or water main to serve the premises of a user." WEBSTER'S THIRD NEW INTERNATION-

AL DICTIONARY 2075 (1993). Similarly, regulations promulgated by the Department of Housing and Urban Development define "utilities" as including "sewerage service, septic tank pumping/maintenance, [and] sewer system hookup." 24 C.F.R. § 950.102; this definition strongly suggests that a sewerage service does *not* include septic tank pumping and cleaning.[2] We therefore conclude that the contract is, on this point, ambiguous.[3]

In resolving this ambiguity, the district court found that the plaintiff's interpretation of the Lease was more compelling for at least two reasons. First, the district court noted that the defendant had drafted the contract. And it is generally accepted that ambiguous contract terms are construed against the drafter. *See FDIC v. Suna Assocs., Inc.,* 80

**2.** In the circumstances of this case, it is not improper to consider such regulations to determine whether the contract is ambiguous. We recognize, of course, that under what is sometimes known as the "four corners" doctrine, extrinsic evidence is generally inadmissible to determine whether a contract is ambiguous. *See* Ferdinand S. Tinio, Annotation, *The Parol Evidence Rule and Admissibility of Extrinsic Evidence to Establish and Clarify Ambiguity in Written Contract,* 40 A.L.R.3d 1384, § 2 (1972) ("[T]he question whether a written contract is ambiguous as a whole or in any of its parts has generally been answered by the courts after considering only the 'four corners' of the instrument....").

This principle, however, is not absolute. The most thoughtful consideration of this issue under federal common law may be found in *AM Int'l, Inc. v. Graphic Management Assocs., Inc.,* 44 F.3d 572, 575–77 (7th Cir.1995) (Posner, *C.J.*). In *AM International,* the court distinguished between "subjective" evidence, which it defined as "the testimony of the parties themselves as to what they believe the contract means," and "objective" evidence, which it defined as "evidence of ambiguity that can be supplied by disinterested third parties." *Id.* at 575. It then went on to hold that while the court could never consider subjective evidence to determine whether a contract was ambiguous, it could in some cases— such as those involving terms of art—consider objective evidence. *Id.* We have implicitly adopted a similar rule in this circuit, for while we have stated that the question of whether a contract is ambiguous must generally be determined without resort to extrinsic evidence, *see, e.g., Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir.1993), we have also stated that this question must be considered from the viewpoint of one "cognizant of the customs,

practices, usages and terminology as generally understood in the particular trade or business." *Nowak,* 81 F.3d at 1192 (citation and internal quotation marks omitted).

There is some question as to whether Connecticut follows the "four corners" doctrine at all. *See Heyman Assocs. No. 1 v. Insurance Co.,* 231 Conn. 756, 653 A.2d 122, 149 n. 13 (1995) (Berdon, *J.,* dissenting). We need not resolve that issue, however, for even if we assume that the Connecticut courts have accepted the doctrine, they have made a clear exception to it dealing with "latent ambiguity." Under Connecticut law, latent ambiguity exists even where a term "is clear and intelligible ... [if] some extrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings." *Ballato v. Board of Educ.,* 33 Conn.App. 78, 633 A.2d 323, 328 (1993) (citation and internal quotation marks omitted). It follows that the existence of latent ambiguity can only be ascertained by looking outside of the contract. This is particularly so where the extrinsic evidence pertains to trade use, because Connecticut courts have noted that a "technical or special meaning" should be honored where it is clearly intended. *See Collins,* 321 A.2d at 448.

Accordingly, even assuming that the phrase "sewerage service" were clear on its face, it would still be proper for us, in applying either federal common law or Connecticut law, to consider evidence like that provided by the Department of Housing and Urban Development regulations to determine whether an ambiguity exists.

**3.** We note in passing that the parties agree that a number of Connecticut postmasters have, against their interest, interpreted language identical to that in paragraph six in the way urged by the plaintiff in this case.

F.3d 681, 685 (2d Cir.1996); *Sturman v. Socha*, 191 Conn. 1, 463 A.2d 527, 532 (1983). Second, the district court pointed out that the defendant had no trouble enumerating specific maintenance obligations in the Lease when it wished to do so. For example, in paragraph six, the defendant obliged the lessor to furnish "all filters required for proper operation of the [heating] system," and "to provide and replace all light ballasts as needed." Lease ¶ 6. The court reasoned that the expression of these specific obligations in paragraph six of the Lease suggested the exclusion of similar unarticulated obligations, such as those relating to the pumping and cleaning of septic tanks, in the same paragraph.

■ The defendant maintains that even if paragraph six did not give rise to an obligation to pump the septic tanks, paragraph seven imposed both this obligation and the obligation to maintain the parking lot. Paragraph seven states in pertinent part that "[t]he lessor shall, unless herein specified to the contrary, maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances ... in good repair and tenantable condition, except in case of damage arising from the act or the negligence of the Government's agents or employees." *Id.* ¶ 7. This provision unambiguously requires the plaintiff to repair the premises so as to keep them in tenantable condition, but, reading the Lease as a whole, it does not with similar certainty obligate the plaintiff to do general cleaning and upkeep. Indeed, reading a complete maintenance requirement into this provision would render the specific maintenance obligations enumerated elsewhere in the contract superfluous. *See City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir.1991) ("[T]he presumption [is] that parties to a contract intend every clause to have some effect.") (citation and internal quotation marks omitted); *Dugan v. Grzybowski*, 165 Conn. 173, 332 A.2d 97, 100

(1973) ("[R]ules of construction ... dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses."). We therefore cannot say that the district court clearly erred in its conclusion that the Lease requires the plaintiff to fix the septic system, but not to pump it, and to repair the parking lot, but not (for example) to clean it.[4]

### 3. The Effect of the Overuse and Improper Maintenance Claims

The district court also did not err in finding that the deterioration of the sewerage system and of the parking lot were caused by the defendant's overuse and failure to maintain the premises.[5] We therefore sustain the district court's award of damages to the plaintiff for this deterioration. Similarly, we find that the district court properly awarded damages for overuse of other parts of the facility, such as greater "turning of door knobs, flipping of switches, vehicular traffic, BTU's of heat to be dissipated by the air conditioning, *etc.*"

Accordingly, we affirm the district court's award of damages for breaches of the Lease.

### B. The District Court Erred in Awarding Damages for Unjust Enrichment

■ In addition to granting the plaintiff damages for breaches of the Lease, the district court assessed the defendant $65,000 for unjust enrichment. The parties agree that on this issue, since federal common law is not dispositive, the court may properly rely on state law. *See Harrell v. United States*, 13 F.3d 232, 235 (7th Cir.1993). Under Connecticut law, unjust enrichment is available "wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." *Providence Elec. Co. v. Sutton Place, Inc.*, 161 Conn. 242, 287 A.2d 379, 381 (1971) (citation and internal

---

4. The unambiguous obligation to repair does not apply to harm caused by the defendant's negligence. Lease ¶ 7. Given its finding that the defendant's overuse was wrongful, the district court did not err in including repair costs in its award to the plaintiff.

5. While the defendant alleges that the district court found that the sewerage system failed because of overuse rather than because of lack of proper maintenance, the court in fact attributed the damage to "overuse *and* the USPS's failure to perform simple routine cleaning and pumping." (emphasis added).

**994**

quotation marks omitted). Because "lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment," *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 649 A.2d 518, 522 (1994), the plaintiff must show that the damages awarded for breaches of the Lease were insufficient to compensate him. The district court seemingly recognized this by stating that, in making its unjust enrichment award, it had "taken care not to duplicate plaintiff's recovery or compensate him for items for which he ha[d] been compensated elsewhere."

In considering the unjust enrichment claim, however, the court did not enumerate any additional damages beyond those that Kerin had received for breaches of the Lease. This is particularly troubling given that the contract damages appear to be comprehensive. The court instead emphasized that its unjust enrichment award was based on "the value of the benefit enjoyed by the Postal Service." But enrichment of the defendant alone is insufficient to sustain a damage award for unjust enrichment—the plaintiff must also show that the enrichment was unjust and that it caused the plaintiff harm. *Hartford Whalers Hockey Club*, 649 A.2d at 522 ("Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.") (citation and internal quotation marks omitted). Because the plaintiff has not proved that the benefit enjoyed by the Postal Service harmed him beyond the contract damages he obtained, he is not entitled to an additional sum. Accordingly, we reverse the unjust enrichment award.

### III. Conclusion

The district court's award of damages for breaches of the Lease is affirmed. Its award of damages for unjust enrichment is reversed. The plaintiff is therefore entitled to $61,802 in damages.