[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, city of Bridgeport, from an October 6, 2000 decision of the defendant, department of social services ("the department"), upholding an audit of the plaintiff's general assistance program for July 1, 1991 to June 30, 1992.[1] This appeal is taken pursuant to General Statutes §§ 17b-78 (d) and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
The record shows as follows. The department issued an audit report dated June 9, 1997 for the fiscal year 1991-1992 regarding the plaintiff's general assistance program.[2] This audit found an overpayment to the plaintiff of $3,367,290, thus allowing the department to claim a recoupment in this amount. (Return of Record ("ROR"), Volume I, p. 115.) By letter dated July 3, 1997, the plaintiff requested an administrative hearing to contest certain aspects of the department's audit. This letter concluded: "Our appeal is based in part on concerns presented by the City of New Haven as reviewed by the consulting firm, MAXIMUS. Furthermore, there are still outstanding audit issues that are not resolved per appeal of G.A. Audit No VA-TA-93-85 that may be applicable to these current findings." (ROR, Volume I, p. 116.)
On or about January 27, 1998, the department met with officials of the plaintiff and advised them that the compliance portion of the audit would be amended by the removing certain errors. An amended audit report was issued on April 21, 1998. (ROR, Volume I, pp. 78-84, 117.) The amended audit, pursuant to the department procedures for audits of the general assistance program, developed errors from statistically selected cases. These selected errors were projected to all cases leading to an adjustment of $1,451,965 due from the plaintiff to the department. (ROR, Volume I, p. 86.)
Again, the plaintiff appealed to the department by way of a letter dated May 18, 1998, which stated:
I am in receipt of the amended General Assistance report dated April 20, 1998 for the period of July 1, CT Page 1591 1991 through June 30, 1992. At this time, I am requesting to exercise our hearing rights.
 Statements regarding specific grounds, on which the appeal is based, were outlined in the correspondence mailed to [DSS] on April 8, 1998.
(ROR, Volume I, p. 118.)
The April 8, 1998 letter contained a series of tables explaining adjustments that the plaintiff believed should have been included in the revised audit. The April 8, 1998 letter also stated: "Please find enclosed our review of additional adjustments that should be reflected in Bridgeport's revised audit report for July 1, 1991 through June 30, 1992." (ROR, Volume I, p. 19.)[3]
On December 10, 1998, the department notified the plaintiff that a hearing would be held on January 5, 1999 regarding the revised audit. (ROR, Volume I, p. 119.) The hearing date was continued several times, twice at the plaintiff's request and twice at the request of the plaintiff and the department. Eventually, the hearing was rescheduled to June 23, 1999. (ROR, Volume I, pp. 1, 89-92.) On May 27, 1999, the plaintiff's attorney wrote to the designated hearing officer listing issues he intended to raise at the hearing. These issues were set forth as follows: (1) the failure of the department to hold a hearing within thirty days of the plaintiff's request; (2) the failure of the department to conduct the audit in a timely manner; (3) the failure of the department to set progressive sanctions; (4) any specific errors made by the department in computing the plaintiff's deficiency; and (5) the fact that the department imposed punitive sanctions on the plaintiff. On June 17, 1999, the hearing officer ruled that the hearing would be limited to those specific and narrow issues set forth in the plaintiff's May 18, 1998 letter and that the plaintiff could not now broaden its list of claims. (ROR, Volume I, p. 97.)
Prior to the June 23, 1999 hearing, the plaintiff raised by motion to dismiss the department's jurisdiction to issue its audit. This motion raised the points contained in the plaintiff's May 27, 1999 letter, namely the conducting of the audit beyond a one-year period from the end of the 1991-1992 fiscal year, the lack of an alleged grace period before imposition of sanctions, and the timeliness of the hearing. (ROR, Volume I, p. 100-14.) At the June 23rd hearing and in her decision of October 6, 2000, the hearing officer denied this motion to dismiss. (ROR, Volume I, p. 2; Volume II, p. 211.)
The plaintiff was afforded an opportunity at the hearing to contest CT Page 1592 eleven cases affecting the outcome of the audit. (ROR, Volume I, p. 2.) After reviewing the record, the hearing officer concluded:
 I hereby order that the amount due the State from the City of Bridgeport for General Assistance expenditures for the period from June 1, 1991 through June 30, 1992 is one million one hundred twenty thousand seven hundred thirty-six dollars and sixty-five cents ($1,120,736.65), that amount being consistent with the findings of the amended audit conducted by the Department of Social Services issued April 28, 1998, except for a reduction in the amount of four hundred forty-eight dollars ($448.00) in relation to case 91700, as discussed in the decision.
(ROR, Volume I, p. 5.)
The plaintiff has appealed to this court from the hearing officer's decision. The court finds that the plaintiff is aggrieved for purposes of this appeal based on the hearing officer's order that the plaintiff refund its overpayment to the state. New Haven v. Public UtilitiesCommission, 165 Conn. 687 (1974).
In this appeal, the plaintiff has not contested the hearing officer's factual determination on the eleven specific cases, but has made claims of errors of law. Our Supreme Court has set forth the following standard when the trial court reviews such matters.
 [A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or an abuse of discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [W]hen a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . (Citations omitted; emphasis added; internal quotation marks omitted.)
MacDermid, Inc. v. Dept. of Environmental Protection, 257 Conn. 128, 137
(2001)
CT Page 1593 Moreover, an agency's interpretation of its own regulations is entitled to deference. . . . [I]t is the well established practice of [the] court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations. . . . When an agency has expertise in a given area and a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts. . . . (Citations omitted; internal quotation marks omitted.)
Id., 138-39; see also Cadlerock Properties Joint Venture, L.P. v.Commissioner of Env. Protection, 253 Conn. 661, 668-69, cert. denied,531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2000).
The first issue raised by the plaintiff is that the department failed to schedule the hearing within thirty days of the plaintiff's hearing request. In support of its argument, the plaintiff relies on § 17b-78-36 [formerly 17-3a-36] of the Regulations of Connecticut State Agencies, which provides in part as follows:
H. Hearing Procedure on Denial of Reimbursement
 A town wishing to exercise its hearing right must file a written request with the Commissioner within 30 days after receipt of the final audit report. The request shall include a statement of the specific grounds upon which the appeal is based.
 The Commissioner, shall set a time and place for the hearing, which shall not be more than 30 days after receipt of the request for a hearing. The Commissioner will notify' the town of the time and location of the hearing not later than 15 days before the date of the hearing.
As indicated above, the amended audit was issue on April 21, 1998, and, after several continuances, the hearing commenced on June 23, 1999. The plaintiff claims that the failure to hold the hearing within the required thirty days deprived the department of jurisdiction to enforce the audit and conduct the hearing.
To analyze this contention, the court first looks to the recent case of CT Page 1594Williams v. Commission on Human Rights Opportunities, 257 Conn. 258
(2001). In that case, the Supreme Court recognized that when analyzing a party's failure to meet a statutory deadline, the court must separate the issue of subject matter jurisdiction from the issue of whether the provision is mandatory or directory. Id., 267. "[W]hether a time limit is mandatory is not determinative of whether the legislature intended the limitation to act as a jurisdictional bar. . . ." Id., 281. The test inWilliams for whether a deadline is jurisdictional is whether the legislature indicated a "strong showing . . . that, in the event of noncompliance, . . . a subject matter jurisdictional bar [was to be imposed] . . ." (Citations omitted; internal quotation marks omitted.) Id., 267; see also Ambroise v. William Raveis Real Estate, Inc.,226 Conn. 757, 764 (1993).[4]
Following Williams, the court concludes that the requirement in the regulation that the department set up a hearing within thirty days of an appeal by an municipality is not jurisdictional. The plaintiff has not pointed to anything to establish a clear jurisdictional bar.[5]
Construing the provision as non-jurisdictional would benefit both the plaintiff and the state's welfare program in that a delay in starting the hearing might lead to a more rational conclusion to a complex matter. Moreover, the fact that the hearing was delayed, so that the plaintiff was unable to present its case until a later date, cannot act as a jurisdictional bar to attempts by the department to recoup the general assistance overpayments. If the hearing could not be held, one of the plaintiff's rights would have been eliminated, nothing more. That is why the cases finding a lack of jurisdiction, have involved filing
requirements. See Ambroise v. William Raveis Real Estate, Inc., supra,226 Conn. 764.
Williams makes the further point that a time restriction provision may be found to be mandatory, and not directory. "[I]f a time limitation imposes a mandatory obligation, it must be fulfilled absent some action by the parties constituting either consent or waiver. . . ." (Citations omitted.) Williams v. Commission on Human Rights Opportunities, supra,257 Conn. 269. The court continued: "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . ." (Citations omitted; internal quotation marks omitted.) Id., 284-85. CT Page 1595
In making this analysis, as the parties agree, the fact that the regulation uses the term "shall" is not conclusive for finding the provision mandatory. Stewart v. Tunxis Service Center, 237 Conn. 71, 76-77
(1996). Nor can the court adopt as binding the canon of construction that the provision is mandatory merely because there are other provisions in the regulation that may well be mandatory. "[R]ules and canons of statutory construction serve as important guidelines to determination of legislative meaning but do not displace the conclusions that careful interpretation yields." (Citation omitted; internal quotation marks omitted.) Williams v. Commission on Human Rights Opportunities, supra,257 Conn. 282-83.[6]
On review, the court concludes that the provision is directory, not mandatory. The general rule is that "if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions [or regulatory provisions], the statute should be construed as directory. . . ." (Citation omitted.) Crest PontiacCadillac, Inc. v. Hadley, 239 Conn. 437, 446 (1996); cf. AngelseaProductions, supra (where the statute provided specifically allowed only a "single extension" to report the results of a CHRO fact-finding investigation.) Section 17b-78-36 [formerly 17-3a-36] of the Regulations of Connecticut State Agencies does not have any sanction for the failure of the department to meet the thirty day deadline. Rather, the regulation was put in place by the department to insure "dispatch" of the matter, not to reach the essence of the matter to be determined.
In addition, the record reflects that the plaintiff's evidence at the hearing to contest the conclusions of the department audit was documentary in form. In an identical case,[7] the trial court, McWeenyJ., ruled that the provision was directory:
 The purpose of § 17b-60 is to afford persons dealing with D.S.S. the opportunity to dispute D.S.S. decisions at the administrative level. In this case, the failure to hold the hearing within thirty days did not compromise the purpose of the statute. Plaintiff was afforded the opportunity to contest the lien on the merits. Plaintiff does not assert in the context of his case, an overriding necessity for such expeditious resolution.
Lariviere v. Thomas, Superior Court, judicial district of New Haven at New Haven, Docket No. 393745 (September 9, 1997, McWeeny, J.) (20 Conn. L. Rptr. 392). These principles apply here as well.
In any event, even if the provision is mandatory, the hearing officer CT Page 1596 correctly concluded that the thirty-day deadline had been waived by the plaintiff. As Williams v. v. Commission on Human Rights Opportunities,
supra, 257 Conn. 269, a mandatory deadline must be met "absent waiver or consent by the parties." (Emphasis added.) It was certainly within the authority of the hearing officer to conclude that "the City waived its right to a hearing within thirty days by not enforcing the right and in fact by participating in settlement discussions and agreeing to several continuances." (ROR, Volume I, p. 2.) Ballato v. Board of Education,33 Conn. App. 78, 89 (1993), cert. denied, 228 Conn. 923 (1994) (hearing officer did not abuse discretion in finding facts, including waiver).
The plaintiff's second argument is that under § 17b-78-36B[8]
[formerly § 17a-3a-36B] of the Regulations of Connecticut State Agencies, the audit must occur within a year from the end of the fiscal year being audited. In fact, the initial audit in this matter occurred within five years of the end of the fiscal year 1991-1992. This issue has been addressed recently in Waterbury v. Wilson-Coker, Superior Court, judicial district of New Britain, Docket No. 498874 (April 3, 2001,Owens, J.) (29 Conn.L.Rptr. 517). This opinion rejects several of the points raised by the plaintiff:
 In the present case, the hearing officer correctly determined that § 17-3a-36 of the general assistance policy manual requires the Department's audit cover a single year period of time so that every fiscal year is audited and that there is no time limit to complete a particular year's audit.
 Waterbury's argument is further flawed because even if the court were to adopt its strained and narrow interpretation of § 17-3a-36, the court finds that section is directory and not mandatory. . . . There is no statute or regulation requiring the Department to complete an audit within a prescribed time or waive the audit findings.
* * *
Waterbury's reliance on the definition of "annual" contained in Webster's Dictionary and Black's Law Dictionary is misplaced. The definition must be considered with all of the factors and surrounding circumstances and the questioned regulations cannot stand or fall on such a delicate thread. In contrast, CT Page 1597 American Heritage Dictionary defines annual as "2. Of or pertaining to a year; determined by a year's time; an annual income. . . ." (Emphasis added.) American Heritage Dictionary (2nd Ed.) To adopt Waterbury's claim and suggest that regulation requires audits to be completed with such speed and alacrity is contrary to law.
(Emphasis in original.) Id.
The court adopts Judge Owens' legal conclusions in this case.
With regard to the Waterbury decision, the plaintiff argues that the trial court did not consider the statutory requirement that the department's general assistance regulations "provide that such audits be conducted in accordance with the generally accepted auditing standards recognized by the . . . American Institute of Certified Public Accountants." General Statutes § 17b-78 (b). The plaintiff gave an offer of proof that the American Institute requires that such audits be done in an timely manner, not the more lengthy period in this case. (ROR, Volume II, pp. 204-05.)
The department drafted these regulations, and has interpreted the time period to audit, even in light of the American Institute standards, not to be as limiting as that sought by the plaintiff. As indicated inMacDermid, Inc. v. Dept. of Environmental Protection, supra,257 Conn. 138-39, the department is entitled to great deference in its interpretation of its own regulations. The hearing officer recognized this principle as well. (ROR, Volume I, p. 2.)
While the plaintiff contends that an audit done long after a fiscal year ends might lead to problems of proof, there is nothing in this record to support that necessary documentation was not available to the plaintiff. Case records must be kept for at least three years after the death of the recipient or final disposition of the case. The municipality cannot destroy or expurgate any part of a case record even if the minimum retention period of three years has passed until the recipient's debt to the community has been satisfied. Regs., Conn. State Agencies § 17b-78-33C [formerly § 17-3a-33C].
The plaintiff's final argument on this point is that the department's interpretation, allowing an annual audit to occur more than a year after the end of the fiscal year, will eliminate the "grace period" found in General Statutes § 17b-78 (d), which provides:
The Commissioner of Social Services shall adopt CT Page 1598 regulations, in accordance with the provisions of chapter 54, concerning the recovery of reimbursements made to towns or districts based on audit findings and setting such progressive sanctions as the commissioner deems appropriate for any town or district which is found as a result of an audit not to be in compliance with the standards established pursuant to this section. The regulations shall include a provision allowing the commissioner to take action to withhold reimbursement under section 17b-134 for any such town or district and shall provide a grace period before a sanction is imposed.
Obviously, the "analysis of this issue is guided by well established principles of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . As with any issue of statutory interpretation, our initial guide is the language of the statute itself. . . . If the words of a statute are unambiguous, we assume that they express the legislature's intent. . . ." (Citations omitted; internal quotation marks omitted.) Ferrato v. Webster Bank, 67 Conn. App. 588, 592 (2002).
Here, the statute makes a clear distinction between the recovery of reimbursements and the allowing of the department to "withhold reimbursement." There is to be a grace period only before the withholding sanction is imposed. In this case, there was no effort to withhold reimbursement, only to order a payment by the plaintiff to the department for past overpayment. Thus, the statute allowing for a grace period has no relevance to this appeal.
The plaintiff's final issue is that the hearing officer erroneously precluded the plaintiff from raising certain issues at the June 23rd
hearing. (ROR, Volume I, p. 97.) The plaintiff would have to concede that it did not, with any specificity, indicate that it would be raising the issues in its July 3, 1997 letter until its attorneys wrote to the hearing officer on May 27, 1999. (ROR, Volume I, pp. 93-94.) Under these circumstances, the hearing officer's decision on how the hearing was to proceed was within her discretion. In any event, the plaintiff was able to raise these disputed issues through the motion to dismiss, which was addressed by the hearing officer.[9] In conjunction with the motion to dismiss, the plaintiff fully set forth its position on all of the issues apparently flowing from the July 3, 1997 letter. (ROR, Volume II, pp. 200-08.) Without a showing of prejudice, the court cannot find an error on the part of the hearing officer. Griffin v. Muzio, 10 Conn. App. 90,94, cert. denied, 203 Conn. 805 (1987); Ann Howard's Apricot'sCT Page 1599Restaurant, Inc. v. CHRO, 237 Conn. 209, 227 (1996).
Therefore, the plaintiff's appeal is dismissed.
Henry S. Cohn, Judge